**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MARYLAND**
**Greenbelt Division**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **AUTOMATED BUSINESS POWER, INC.,** | ) | **Case No. 13-27123 (WIL)** |
| | ) | |
| **and** | ) | |
| | ) | |
| **AUTOMATED BUSINESS POWER HOLDING CO.** | ) | **Case No. 13-27125 (WIL)** |
| | ) | |
| | ) | **Chapter 11** |
| **Debtors.** | ) | |
| _____ | ) | **Jointly Administered** |

## DEBTORS' SECOND[1] AMENDED PLAN OF REORGANIZATION, AS FURTHER MODIFIED

Automated Business Power, Inc., and Automated Business Power Holding Co., the above-captioned Debtors and Debtors-in-Possession herein (collectively, the "Debtors"), by counsel, hereby propose this Second Amended Plan of Reorganization, as Further Modified, as of the date hereof, pursuant to the provisions of chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq.

Dated: February 9, 2015

---

[1] This Plan contains updates from the Debtor's First Amended Plan filed on May 29, 2014 necessitated by the passage of time, Orders of the Court, and agreements between the Debtors and certain creditors.

# TABLE OF CONTENTS

                                                                          Page

1.      Article I:  Definitions and Terms of Construction ...........................    1

2.      Article II:  Provision for Payment of Administrative Claims,
        Priority Claims and Priority Tax Claims............................................   10

3.      Article III:  Classification of Claims and Interests...........................   14

4.      Article IV:  Treatment of Claims and Interests...............................   14

5.      Article V:  Means of Execution of the Plan ....................................   17

6.      Article VI:  Provisions Governing Distributions .............................   18

7.      Article VII:  Executory Contracts and Unexpired Leases................   21

8.      Article VIII:  Procedures for Resolving and Treating Disputed
        Claims and Interests .........................................................................   21

9.      Article IX:  Effectiveness of the Plan .............................................   23

10.     Article X:    Effect of Confirmation..................................................   24

11.     Article XI:  Litigation and Avoidance Claims .................................   26

12.     Article XII:  Retention of Jurisdiction .............................................   27

13.     Article XIII:  Acceptance or Rejection of the Plan ..........................   29

14.     Article XIV:  Miscellaneous Provisions ...........................................   29

## ARTICLE I
## DEFINITIONS AND TERMS OF CONSTRUCTION

**A.    Definitions.**

For purposes of this Plan (as hereinafter defined), the following terms shall have the respective meanings set forth below:

"Administrative Agent" shall mean that Administrative Agent appointed and serving under the Credit Agreement.  PNC Bank is the Administrative Agent as of the date of this Plan.

"Administrative Expense Claim(s)" shall mean any cost or expense of administration of the Chapter 11 Case under § 503(b) of the Bankruptcy Code and entitled to priority in payment under § 507(a)(1) of the Bankruptcy Code, including any actual and necessary expenses of preserving the estate of the Debtors, any actual and necessary expenses of operating the business of the Debtors, any indebtedness or obligations incurred or assumed by the Debtors during the pendency of the Chapter 11 Case in connection with the conduct of the business of, the lease of property by, or the rendition of services to the Debtors, all fees and expenses of Professional Persons, and U.S. Trustee Fees.

"Allowed" or "Allowed Claim(s)" shall mean: (a) the amount of a Claim or an Administrative Expense Claim that has been allowed in this Plan or in accordance with § 502 of the Bankruptcy Code by a Final Order; or (b) the amount of a Claim or an Administrative Expense Claim, proof of which has been timely filed with the Clerk of the Bankruptcy Court or, if no proof of Claim has been filed, that is listed in the Schedules as undisputed, noncontingent and liquidated, and as to which Claim or Administrative Expense Claim (i) no objection to the allowance thereof has been interposed within any period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or orders of the Bankruptcy Court, or (ii) an objection has

been interposed, which objection has been determined by a Final Order, to the extent such objection is determined in favor of the claimant, or (iii) with respect to fees and expenses of Professional Persons, the amount of such fees and expenses allowed by the Bankruptcy Court.

"ABP Holding Co. Note" shall mean Note Payable by Automated Business Power Holding Co. to Halevy in the approximate amount of $13,502,329.00.

"Avoidance Actions" shall mean claims for the avoidance of any transfer by or obligation of the Debtors under chapter 5 of the Bankruptcy Code or the recovery of the value of such transfer.

"Bankruptcy Code" shall mean the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq.

"Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Maryland, or any court or tribunal subsequently constituted to adjudicate matters arising under the Bankruptcy Code or any successor bankruptcy laws promulgated by the Congress of the United States and which assumes jurisdiction over this Chapter 11 Case.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as amended from time to time, applicable to this case as of the Petition Date.

"Bar Date" shall mean the deadline for filing Proofs of Claim in this Chapter 11 Case, said date being February 3, 2014 for non-government claimants and April 7, 2014 for governmental units.

"Business Day" shall mean a day other than a Saturday, a Sunday, or a holiday when the Bankruptcy Court is closed for ordinary business.

"Case Closing Date" shall mean the date the Bankruptcy Court enters an order closing the Debtor's Chapter 11 Case.

"Cash" shall mean all cash and cash equivalents.

"Cash Collateral Order" shall mean that order entered by the Bankruptcy Court on January 8, 2014 (D.E. 108) as modified or amended.

"Cash Receipts from Operations" shall mean the Cash received by the Debtors from the operation of their business or from any other source; provided, however, that Cash Receipts from Operations shall not include accounts receivable or other non-Cash intangibles, which would otherwise be classified as "income" under the Debtor's accrual based accounting system.

"Cause of Action" shall mean, without limitation, any and all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, claims and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

"Chapter 11" shall mean chapter 11 of the Bankruptcy Code.

"Chapter 11 Cases" shall mean the chapter 11 cases of the Debtors.

"Claim(s)" shall mean: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right

3

to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"Class" shall mean a Claim or Interest or a group of Claims or Interests consisting of those Claims or Interests which are substantially similar to each other, as classified under this Plan, or a Claim or Interest or a group of Claims or Interests classified by amount as may be reasonable and necessary as administrative convenience claims, or a group of Claims or Interests which are otherwise separately classified in accordance with this Plan and the Bankruptcy Code.

"Confirmation Date" shall mean the date on which the Bankruptcy Court enters the Confirmation Order.

"Confirmation Hearing" shall mean the hearing to be held by the Bankruptcy Court regarding the confirmation of this Plan, as may be amended, modified or supplemented, as such hearing may be adjourned or continued from time to time.

"Confirmation Order" shall mean the order of the Bankruptcy Court confirming this Plan under § 1129 of the Bankruptcy Code.

"Credit Agreement" shall mean that Amended and Restated Credit Agreement dated as of April 3, 2012, as amended, by and between the Administrative Agent, the Lenders party thereto from time to time, and Automated Business Power, Inc.

"Creditor" shall mean any person who asserts a Claim against the Debtors.

"Debtors" and "Debtors-in-Possession" shall mean, collectively, Automated Business Power, Inc. and its parent, Automated Business Power Holding Co.

"DIP Loan" shall mean the revolving line-of-credit facility made by Halevy to the Debtors pursuant to the Loan Agreement approved by the Bankruptcy Court by Order entered on November 27, 2013 [Case No. 13-27123, Dkt. No. 84].

4

"Disallowed Amount" shall mean, with respect to a particular Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Disputed Claim and the Allowed Amount thereof.

"Disclosure Statement" shall mean the Disclosure Statement that relates to this Plan and is approved by the Bankruptcy Court pursuant to § 1125 of the Bankruptcy Code, as such Disclosure Statement may be amended, modified, or supplemented (and all exhibits and schedules annexed thereto or referred to therein).

"Disputed Claim(s)" shall mean any Claim for which an Allowed Claim has not yet been determined, and with respect to which (i) an objection has been interposed on or prior to the Effective Date or such other date as may be fixed by the Bankruptcy Court or this Plan and has not been resolved by agreement or Final Order, (ii) the Debtors have scheduled as disputed, contingent or unliquidated, or (iii) the Claim is set forth in an improper Proof of Claim or a Proof of Claim untimely filed.  To the extent an objection relates to the allowance of only a part of a Claim, such claim shall be a Disputed Claim only to the extent of the objection.

"Distribution" shall mean any distribution made under this Plan to the holders of Allowed Claims or Allowed Interests.

"Effective Date" shall mean the day on which all the conditions set forth in Article IX of this Plan have been satisfied or waived.

"ESOP" shall mean the Employee Stock Ownership Plan of Automated Business Holding Co.

"ESOP Trust" shall mean the trust formed in connection with the ESOP.

"ESOP Professionals" shall mean Evolve Bank, the trustee of the ESOP Plan, Stout, Risius & Ross, provider of annual valuation of the ESOP assets and American ESOP Advisors, provider of record keeping and reporting services to the ESOP.

"Estate" shall mean the chapter 11 bankruptcy estate of the Debtors.

"Estate Assets" shall mean all of the Debtors' property, rights or interests existing as of the Effective Date.

"Excess Cash" shall mean all Cash held by, or on behalf of, the Debtors at the end of each calendar month after the payment from the revenues of the Debtors of only the following: (i) ordinary course of business operating expenses of the Debtors due prior to the end of that  month, (ii) taxes owed by the Debtors through the end of that month, and (iii) the Minimum Principal Payment for that month and interest payments upon the Senior Loan.  The "Minimum Principal Payment" shall be $500,000 for the purpose of calculating Excess Cash as of the end of each month of the Second Payment Period, and it shall be $400,000 for the purpose of calculating Excess Cash as of the end of each month of the Third Payment Period.

"Face Amount" shall mean, with respect to a particular Claim, (a) if the holder of such Claim has not filed a Proof of Claim with the Bankruptcy Court on or before the Bar Date, which is the time period of limitation fixed by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c)(3) for the filing of Proofs of Claim, the amount of such Claim if it is listed in the Schedules as not disputed, not contingent or unliquidated, or (b) if the holder of such Claim has filed a Proof of Claim with the Bankruptcy Court prior to the Bar Date, which is the time period of limitation fixed by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c)(3) for the filing of Proofs of Claim, the amount stated in such Proof of Claim.

6

"Final Order" shall mean an order of the Bankruptcy Court which is not the subject of a pending appeal, which has not been reversed, stayed, modified or amended, and respecting which the time to appeal from or to seek review or rehearing shall have expired, as a result of which such order shall have become final in accordance with Bankruptcy Rule 8002.

"First Payment Period" shall mean that period commencing on the first calendar day of the month in which the Effective Date occurs and ending on the last calendar day of the calendar month immediately after the month in which the Effective Date occurs.

"First Power Group LLC" shall mean the landlord for the office and warehouse space that the Debtors use and occupy for their business operations pursuant to certain written lease agreements (the "Lease Agreements") with the Debtors.

"General Unsecured Claim(s)" shall mean an unsecured Prepetition Claim against the Debtors that is not entitled to Priority Status.

"Halevy" shall mean Eyal Halevy, the founder and former principal of Automated Business Power, Inc., and a creditor and equity holder with respect to the Estate.

"Halevy Guarantee" shall mean the limited guarantee of payment by Halevy to the Lenders, not to exceed $2,500,000.

"Interests" shall mean the rights of the ESOP Trust as holder of any and all issued and outstanding stock interests in Automated Business Power, Inc. and Automated Business Power Holding Co., the rights of all participants in the ESOP, and all outstanding warrants relating to the stock in the Debtors.

"Lenders" shall mean those lenders party to the Credit Agreement from time to time, currently PNC Bank, National Association, TriState Capital Bank, National Penn Bank, Santander Bank, N.A., and Citizens Bank of Pennsylvania.

7

"Petition Date" means October 8, 2013, the date on which the Debtors commenced the Chapter 11 Cases.

"Plan" shall mean this Second Amended Plan of Reorganization, and any amendments hereto, modifications hereof or supplements hereto.

"Plan Objection Deadline" shall mean the deadline by which parties shall be required to file an objection to this Plan.

"PNC Bank" shall mean PNC Bank, National Association, as Administrative Agent and Lender pursuant to the Senior Loan Documents.

"Prepetition Claim(s)" shall mean any Claim(s) against the Debtors arising or accruing prior to the Petition Date.

"Priority Claim(s)" shall mean all Claim(s) as defined in § 507 of the Bankruptcy Code, except Claims as defined in §§ 507(a)(1), (a)(2) and (a)(8) of the Bankruptcy Code.

"Priority Status" shall mean the priority in distribution which is afforded to certain Claims against the Debtors pursuant to § 507(a) of the Bankruptcy Code.

"Priority Tax Claims" shall mean all Claims entitled to priority treatment pursuant to § 507(a)(8) of the Bankruptcy Code.

"Professional Persons" shall mean persons retained by order of the Bankruptcy Court pursuant to §§ 327, 328, 330 or 1103 of the Bankruptcy Code, including counsel and special ESOP counsel to the Debtors, Debtors' accountants and ESOP Professionals.

"Proof of Claim" shall mean a proof of claim filed pursuant to § 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

"Pro Rata" shall mean the proportion that the amount of an Allowed Claim or Interest in a particular Class or Classes bears to the aggregate amount of all Allowed Claims or Interests in such Class or Classes.

"Reorganized Debtors" shall mean the Debtors, as reorganized and reconstituted by this Plan.

"Representative(s)" shall mean any and all current or former officers, directors, attorneys, consultants and advisors, in each case, solely in their respective capacities as such, serving or holding interests prior to the occurrence of the Effective Date.

"Second Payment Period" shall mean that period commencing on the first calendar day of the second calendar month after the calendar month in which the Effective Date occurs, and ending on the last calendar day of the eleventh calendar month after the calendar month in which the Effective Date occurs.

"Senior Loan" shall mean that $58,000,000 term loan facility evidenced by the Credit Agreement.

"Senior Loan Documents" shall mean (1) the Credit Agreement; (2) Amended and Restated Term Facility Notes aggregating $58,000,000; (3) Security Agreement and Financing Statement filed and continued with the Secretary of State of Nevada; (4) ABP Holding Co. Guaranty dated November 20, 2008; (5) Stock Pledge Agreement and Financing Statement filed and continued with the Secretary of State of Nevada; (6) all related documents executed in connection with the Senior Loan including but not limited to all subordination agreements; and (7) any amendments to the foregoing.

"Schedules" shall mean the schedules of assets and liabilities and statement of financial affairs filed by the Debtors with the Bankruptcy Court in accordance with § 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules, and any amendments thereto.

"Third Amendment to Credit Agreement" shall mean that Third Amendment to Amended and Restated Credit Agreement and Other Loan Documents attached hereto as Exhibit 1.

"Third Payment Period" shall mean that period commencing on the first calendar day of the twelfth calendar month after the month in which the Effective Date occurs, and ending on the last day of the thirty-eighth calendar month after the month in which the Effective Date occurs.

"UQU General LLC" shall mean the entity that serves as a consultant to the Debtors that provides services pursuant to that certain Consulting Agreement (the "Consulting Agreement") dated January 1, 2013.

"U.S. Trustee Fees" shall mean any fees payable by the Debtors pursuant to 28 U.S.C. § 1930.

**B.**      **Terms of Construction:**

Capitalized Terms.  The capitalized terms of this Plan shall have the meanings set forth in this Plan.  In the event a capitalized term of this Plan is not defined in this Plan, then it shall have the meaning given in the Bankruptcy Code or the Bankruptcy Rules.  In the event a capitalized term of this Plan is not defined in this Plan, the Bankruptcy Code, or the Bankruptcy Rules, then it shall have the meaning such term has in ordinary usage and if one or more meaning for such term exists in ordinary usage, then it shall have the meaning which is most consistent with the purposes of this Plan and the Bankruptcy Code.

Reasonable Construction.  The terms of this Plan shall not be construed against any person but shall be given a reasonable construction, consistent with the purposes of this Plan and the Bankruptcy Code.

Herein, Hereof, Hereto, and Hereunder.  The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

Plural.  Unless otherwise specified, the plural shall include the singular and the singular shall include the plural.

Gender.  Unless otherwise specified, the references to the masculine shall include the feminine and reference to the feminine shall include the masculine.

Including.  The term "including" shall not be deemed to be exclusive and shall be deemed to mean "including without limitation."

Headings.  Headings are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

## ARTICLE II
## PROVISION FOR PAYMENT OF ADMINISTRATIVE CLAIMS, PRIORITY CLAIMS AND PRIORITY TAX CLAIMS

2.1    Allowed Professional Persons' Fees.  Notwithstanding the requirement that all Allowed Administrative Expense Claims be paid in full as a condition to the effectiveness of the Plan, Professionals Persons employed in this case have agreed to allow the effectiveness of the Plan to proceed without payment in full of the fees due to Professional Persons if there are not sufficient funds to pay the allowed Professional Person in full on the Effective Date.  In such event, the Professional Persons have agreed to accept monthly pro rata distributions from Excess Cash, capped at $30,000 per month, toward the satisfaction of their

11

respective outstanding and unpaid Allowed Administrative Expense Claims until such Allowed Administrative Expense Claims are paid in full. Notwithstanding the foregoing, Professional Persons with Administrative Expense Claims shall comply with the provisions of Section 6.6 of this Plan.

        2.2    <u>Other Allowed Administrative Expense Claims</u>.

        (a)    Except as provided below, Holders of Allowed Administrative Expense Claims (other than Professional Persons) will receive Cash equal to the unpaid portion of such Allowed Administrative Expense Claim on the later of (a) the Effective Date, (b) the date on which such entity becomes a holder of such Allowed Administrative Expense Claim, or (c) such date as such entity may agree to with the Debtors.

        (b)    Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors-in-Possession, or liabilities arising under other obligations incurred by the Debtors, as Debtors-in-Possession, whether or not incurred in the ordinary course of business, shall be paid by the Reorganized Debtors in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents relating to, such transactions.

        (c)    There are no amounts due and owing by the Debtors to Halevy pursuant to the DIP Loan. The DIP Loan facility shall be terminated on the Confirmation Date.

        (d)    The Debtors have assumed the Lease Agreements with First Power Group LLC on or before the Effective Date. The Debtors have agreed that all amounts due and owing under the Lease Agreements prior to the Effective Date, including condo fees, but excluding real estate taxes not to exceed $50,000 (the "Deferred Lease Amounts") shall be Allowed (and not subject to avoidance, defenses or set offs) and be deferred until the Class 1

Claim has been paid in full. All outstanding credit card charges, real estate taxes and condominium fees due and owing prior to the Effective Date, up to the amount of $50,000, shall be paid on the Effective Date (whether due to Montgomery County, Maryland or to be reimbursed to Halevy). The Deferred Lease Amounts shall be due and payable in full on the first day of the first full month following the payment in full of the Class 1 Claim, or on such later date as may be agreed upon by the Debtors and First Power Group. Amounts becoming due under the Lease Agreements after the Effective Date shall be paid as and when due under the Lease Agreements.

        (e)      The Debtors shall assume or have assumed the Consulting Agreement with UQU General LLC on or before the Effective Date, and such Consulting Agreement shall be extended to June 30, 2015. All amounts due and owing under the Consulting Agreement through December 31, 2014 shall be Allowed ( and not subject to avoidance, defenses, or set offs) and shall be deferred until the Class 1 Claim has been paid in full, which deferred amounts shall be due and payable in full on the first day of the first full month following the payment in full of the Class 1 Claim or on such later date as may be agreed upon by the Debtors and UQU General LLC. Amounts becoming due under the Consulting Agreement after December 31, 2014 (to include amounts that become due as a result of extending the term of the Consulting Agreement) shall be paid as and when due under the Consulting Agreement in accordance with the terms thereof.

        (f)      Notwithstanding § 503(a) of the Bankruptcy Code, other than with respect to the Lease Agreements, the Consulting Agreement, and the DIP Loan, any person seeking payment of an Administrative Expense Claim under § 503 of the Bankruptcy Code that was incurred on or before the Effective Date but which has not been paid by the Debtors, shall be

required to file an application for the allowance such claim within sixty (60) days of the Effective Date, and any such Claim not filed by that date shall be forever barred and discharged.

2.3 <u>Allowed Priority Claims</u>. The holders of Allowed Priority Claims will receive Cash equal to the unpaid portion of such Allowed Priority Claim, on the later of (a) the Effective Date, (b) the date on which said entity becomes a holder of such Allowed Priority Claim, or (c) such date as such entity may agree to with the Debtors.

2.4 <u>Allowed Priority Tax Claims</u>. Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, at the sole option of the Reorganized Debtors, each holder of an Allowed Priority Tax Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim: (a) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or (b) equal annual Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at a fixed annual rate, which is consistent with applicable laws or as set by order of the Bankruptcy Court, over a period not exceeding five (5) years after the Petition Date, which shall begin on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim. Notwithstanding the foregoing, payment terms for Allowed Priority Tax Claims shall not be less favorable than the treatment of General Unsecured Claims. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

14

**ARTICLE III**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

3.1     Class 1.  Class 1 consists of the Allowed Secured Claim of the Lenders.

3.2.    Class 2.  Class 2 consists of Allowed Unsecured Claims of Halevy pursuant to the Automated Business Holding Co. Note.

3.3     Class 3.  Class 3 consists of all other general unsecured claims.

3.4     Class 4.  Class 4 consists of all Interests held in the Debtors.

**ARTICLE IV**
**TREATMENT OF CLAIMS AND INTERESTS**

4.1     Class 1 Claims (Secured Claims of the Lenders)

A.     Impairment:   Class 1 is impaired by this Plan.

B.     Treatment:   The Claims of the Administrative Agent and the Lenders shall be Allowed in the aggregate amount of $29,440,691.24 as of the Petition Date, and the Debtors agree and acknowledge that $22,809,676.11 is the aggregate principal amount of the Allowed Claims of the Administrative Agent and the Lenders as of February 4, 2015.  The Allowed Claims of the Admininstrative Agent and the Lenders are not subject to avoidance, setoffs or defenses.  The Credit Agreement shall be modified as of the Effective Date as set forth in the Third Amendment to Credit Agreement.  The Debtors shall be obligated to pay Class 1 in accordance with the Third Amendment to Credit Agreement, including but not limited to as follows:

(i)     The monthly payment terms contemplated in Section 3.2 of the Credit Agreement shall be modified as follows:

A.     First Payment Period.  During the First Payment Period, the Debtors shall make payments of accrued interest only on the 28th day of each calendar month of the First Payment Period.  The interest

15

payment that is due and payable on the 28th day of the first (1st) calendar month of the First Payment Period shall include all unpaid interest accrued as of the last day of the immediately preceding calendar month, even though such unpaid interest accrued on the Senior Loan prior to the Effective Date. The interest payment due and payable on the 28th day of the second (2nd) calendar month of the First Payment Period shall include all unpaid interest accrued as of the last day of the immediately preceding calendar month, even though such unpaid interest accrued on the Senior Loan prior to the Effective Date.

B.    Second Payment Period. During the Second Payment Period, the Debtors shall make the following payments on the 28th day of each successive month occurring during the Second Payment Period: (a) a monthly payment of all unpaid interest that has accrued upon the Senior Loan as of the last day of the immediately preceding calendar month; (b) a monthly principal payment upon the Senior Loan of not less than Five Hundred Thousand Dollars ($500,000) per month; and (c) an additional monthly principal payment upon the Senior Loan in the amount of One Hundred Thousand Dollars ($100,000) from Excess Cash that is equal to or exceeds One Million Six Hundred Thousand Dollars ($1,600,000) held by or on behalf of the Debtors as of the last day of the immediately preceding calendar month.

C.    Third Payment Period. During the Third Payment Period, the Debtors shall make the following payments on the 28th day of each successive calendar month occurring during the Third Payment Period: (a) a monthly payment of all unpaid interest that has accrued upon the Senior Loan as of the last day of the immediately

16

preceding calendar month; (b) a monthly principal payment upon the Senior Loan of not less than Four Hundred Thousand Dollars ($400,000) per month; (c) an additional monthly principal payment upon the Senior Loan in the amount of One Hundred Thousand Dollars ($100,000) from Excess Cash that is equal to or exceeds One Million One Hundred Thousand Dollars ($1,100,000) held by or on behalf of the Debtors as of the last day of the immediately preceding calendar month; and (d) an additional monthly principal payment upon the Senior Loan in the amount of One Hundred Thousand Dollars ($100,000) from Excess Cash that is equal to or exceeds One Million Seven Hundred Thousand Dollars ($1,700,000) held by or on behalf of the Debtor as of the last day of the immediately preceding calendar month.

     D.    <u>Final Payment</u>.  The Debtors shall pay and satisfy in full the unpaid aggregate principal balance of the Senior Loan plus all accrued interest, reimbursements and all other Obligations payable to the Administrative Agent and/or the Lenders in accordance with the terms of the Loan Documents on or before the earlier of: (a) the Expiration Date; or (b) any date of demand if payment becomes due and payable under the Credit Agreement or any of the Loan Documents upon acceleration.

     E.    <u>Cash Collateral Payments</u>.  The Debtor's obligations to the Administrative Agent under the Cash Collateral Order, including payment obligations, shall continue until the Effective Date.

     (i)    The definition of "Expiration Date" in Section 1.1 of the Credit Agreement shall modified to mean the first (1st) day of the thirty-ninth (39th) month after the Effective Date or such earlier date on which such

17

obligations shall have been declared due and payable in full pursuant to the terms of the Credit Agreement or applicable Law.  The Class 1 claims shall be paid in full on the Expiration Date (as defined in the Credit Agreement).

(ii)     Section 4 of the Credit Agreement shall be modified to provide that the interest rate shall be an interest rate of five percent (5%) per annum, and the default interest rate shall be an interest rate of seven (7%) per annum.

(iii)     All defaults under the Senior Loan Documents prior to the Effective Date shall be deemed waived without prejudice to the enforcement of any default or Event of Default after the Effective Date.

(iv)     Covenants set forth in Section 8 of the Credit Agreement shall apply to all periods after the Effective Date.  The following Covenants shall be amended in the manner set forth in the Third Amendment to Credit Agreement:  8.1.11 (Accounts), 8.2.1 (Indebtedness), 8.2.4 (Loans and Investments), 8.2.5 (Dividends and Related Distributions), 8.2.8 (Affiliated Transactions), 8.2.9 (Subsidiaries, Partnerships and Joint Ventures), 8.2.12 (Issuance of Stock), 8.2.14 (Mixed Free Charge Coverage Ratio).   The following Covenants shall be deleted:  8.1.10 (Interest Rate Hedge Agreements), and 8.2.15 (Maximum Leverage Ratio).  The following Covenants shall be added:  8.2.16 (Anti Money Laundering/International Trade Law Compliance), 8.3.6. (Cash Flow Reporting), and 8.3.7 (Reportable Anti-Terrorism Compliance Event).

(v)     Early payment of the Claims of the Administrative Agent and the Lenders is authorized under this Plan and shall not be subject to a prepayment penalty, fee or make whole payment.

(vi)     The Senior Loan Documents shall otherwise be modified as agreed by the Lenders and the Debtors in their respective discretion prior to the Effective Date.  The Senior Loan shall continue to be secured by all of the security interests and liens on property existing as of the Petition Date, and by the security interests and liens on property that includes property generated after the Petition Date, as granted by the Final Cash Collateral Order.

4.2     <u>Class 2 Claims</u> (Unsecured Claim of Halevy Under ABP Holding Co. Note)

A.     <u>Impairment</u>:  Class 2 is impaired by this Plan.

B.     <u>Treatment</u>:  In full and complete satisfaction discharge and release of the Class 2 Claim, which Claim shall be Allowed (and it shall not be subject to avoidance, defenses or set offs) the holder of Allowed Class 2 Claim shall be treated as follows:  All payments due under the ABP Holding Co. Note shall be deferred until the Class 1 Claim has been paid in full and such deferred amounts shall be due and payable in full on the first day of the first full month following the payment in full of the Class 1 Claim, or upon such later date as the holder of the Class 2 Claim and the Debtors may agree.  Interest at the rate of seven percent (7%) interest per annum shall be added to the outstanding principal balance of the note evidencing the Allowed Class 2 Claim in accordance with the note instrument evidencing such claim.  The Class 2 Claim shall be subordinated to the Class 1 Claim in accordance with the Affiliate Subordination Agreement dated as of November 20, 2008, as amended and reaffirmed

19

from time to time, by and between Halevy and the Administrative Agent for the benefit of the Lenders (the "Affiliate Subordination Agreement").

      4.3      <u>Class 3 Claims (General Unsecured Claims)</u>

      A.      <u>Impairment</u>:   Class 3 is impaired by this Plan.

      B.      <u>Treatment</u>:  In full and complete satisfaction, discharge and release of the Class 3 Claims, the holders of Allowed Class 3 shall receive 100% of their Allowed Claims, without interest, from Excess Cash in quarterly pro rata payments commencing thirty (30) days after the Effective Date.  The Debtors shall have the right to prepay Class 3 Claims from the proceeds of any post-Effective Date financing that the Debtors may obtain, provided however that no such prepayment shall be made until the holders of the Allowed Class 1 Claim and the Allowed Class 2 Claim are paid in full.

      4.4      <u>Class 4 Interests (Automated Business Power Inc. and Automated Business Power Holding Co. Stock Interests)</u>

      A.      <u>Impairment</u>:  Class 4 Interests are impaired by this Plan.

      B.      <u>Treatment</u>:  Class 4 Interests shall retain their respective Interests under the Plan.

## ARTICLE V
## <u>MEANS OF EXECUTION OF THE PLAN</u>

      5.1      <u>Funding</u>.  The funds necessary to implement the Plan shall be generated from, among other things, (i) Cash Receipts from Operations; (ii) the Halevy Guarantee; and (iii) the acquisition by the Debtors of new financing in an amount sufficient to pay the Class 1 Claim in full and, if possible, also the Allowed Class 2 Claim and Allowed Class 3 Claims.

5.2    <u>Authority of Reorganized Debtors</u>.   By confirmation of this Plan, the Reorganized Debtors are authorized to carry out its duties under this Plan.  In carrying out such duties, the Reorganized Debtors shall comply with all applicable laws.

5.3    <u>Rights, Duties and Obligations of Reorganized Debtors</u>.  On the Effective Date, the Reorganized Debtors alone shall have the following rights, duties and obligations, <u>inter alia</u>:

a.    to use, sell or lease any or all of the property of the Estate;

b.    to distribute funds to holders of Allowed Claims and Interests consistent with the terms of this Plan;

c.    to provide to the Administrative Agent, monthly financial information as required by the Senior Loan Documents;

d.    to file a final report and move to close the Debtors' Chapter 11 Cases;

e.    any other duties of a debtor consistent with the Bankruptcy Code, payment to holders of Claims and Interests, and to implement this Plan; and

f.    to file quarterly disbursement reports as required by the Office of the United States Trustee and pay such fees associated therewith.

5.4    <u>Vesting of Assets</u>.  On the Effective Date, by virtue of the Confirmation of this Plan, the assets of the Estate shall vest in the Reorganized Debtors, free and clear of all liens, claims or encumbrances except as set forth in this Plan and no further order of Bankruptcy Court shall be required for the Reorganized Debtors to sell, convey, loan, or encumber any asset of the Estate.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

6.1    Distributions of Cash.    At the option of the Reorganized Debtors, any Cash payment to be made by the Reorganized Debtors pursuant to this Plan may be made by check drawn on a domestic bank or by wire transfer.

6.2    Delivery of Distributions and Undeliverable Distributions.    Distributions to holders of Allowed Claims and Interests shall be made at the address of each such holder as set forth on the Schedules filed with the Bankruptcy Court unless superseded by the address as set forth on the Proofs of Claim filed by such Holders or other writing notifying the Debtors (or, after the Effective Date, the Reorganized Debtors) of a change of address.    If any holder's distribution is returned as undeliverable, the holder of any such Claim or Interest shall not be entitled to any other or further distribution under this Plan on account of such Claim or Interest unless the Debtors are notified of a new address within six (6) months of the Debtors' receipt of such returned distribution.

If such address is not provided within six (6) months of the date such undeliverable distribution was sent, the distribution shall be treated as Excess Cash and such distribution, as well as any future distributions shall not be payable to such holder and will be **FORFEITED** until notification of a valid address is received by the Reorganized Debtors and thereafter, future distributions to that holder may re-commence.  **UPON CONFIRMATION OF THIS PLAN, ALL CREDITORS AGREE THAT THEY HAVE A DUTY TO KEEP THEIR ADDRESS FOR DISTRIBUTIONS CURRENT WITH THE REORGANIZED DEBTORS.**

6.3    <u>Withholding and Reporting Requirements</u>.  In connection with this Plan and all documents executed in connection therewith and distributed thereon, the Reorganized Debtors shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authorities, and all distributions under this Plan shall be subject to any such withholding or reporting requirements.

6.4    <u>Time Bar to Cash Payments</u>.  Checks issued by the Reorganized Debtors in respect of Allowed Claims or Interests shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.  Requests for reissuance of any check shall be made to the Reorganized Debtors by the holder of the Allowed Claim or Interest to whom such check originally was issued.  On the last distribution date, all distributions for which checks were not requested to be reissued shall be used to satisfy the costs of administering and fully consummating this Plan and the holder of any such Claim or Interest shall not be entitled to any other or further distribution under this Plan on account of such Claim or Interest.

6.5    <u>Setoffs</u>.  The Reorganized Debtors may, in accordance with § 553 of the Bankruptcy Code and applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to this Plan, on account of such Claim (before any distribution is made on account of such Claim), the claims, rights and causes of action of any nature that the Debtors or the Reorganized Debtors may hold against the holder of such Allowed Claim; <u>provided</u>, <u>however</u>, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Debtors-in-Possession, or the Reorganized Debtors of any such claims, rights and causes of action that the Debtors, the Debtors-in-Possession, or the Reorganized Debtors may possess against such holder; and

23

provided further, however, that any claims of the Debtors arising before the Petition Date shall first be setoff against Claims against the Debtors arising before the Petition Date.

6.6    <u>Professional    Persons    with    Administrative    Expense    Claims</u>. Notwithstanding § 503(a) of the Bankruptcy Code, each Professional Person or firm retained with approval by order of the Bankruptcy Court requesting compensation in this Chapter 11 Case pursuant to §§ 330 or 503(b) of the Bankruptcy Code for any fees for services rendered or reimbursement of expenses incurred on or before the Effective Date, shall be required to file an application for the allowance of final payment of said fees and expenses on or before sixty (60) days after the Effective Date, and any such claim not filed by that date shall be forever barred and discharged.  Objections to any such application shall be filed within twenty (20) days after the filing of the application.  The provisions of this paragraph are not intended to limit or expand the ability of Professional Persons to receive compensation for services performed or reimbursement for expenses incurred post-Effective Date to facilitate the consummation of this Plan and the performance by the Reorganized Debtors of their duties under this Plan.  The Reorganized Debtors may pay any fees and expenses of Professional Persons incurred after the Effective Date without further order of the Bankruptcy Court.

6.7    <u>Transactions on Business Days</u>.  If the date on which a transaction is scheduled to occur under this Plan falls on a day that is not a Business Day, the transactions contemplated by this Plan to occur on such day may instead occur on said day or the next Business Day.

## ARTICLE VII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1    <u>Rejection</u>.  Except as otherwise expressly set forth in this Plan, all executory contracts and unexpired leases of the Debtors shall be deemed assumed by the

Reorganized Debtors on the Effective Date unless an application to reject the executory contract or unexpired lease has been made to the Bankruptcy Court prior to the Confirmation Hearing.

       7.2    <u>Claims Arising From Rejection</u>.  Any Claim arising from the rejection of an unexpired lease or executory contract shall be filed with the Bankruptcy Court no later than thirty (30) days after the entry of a Final Order approving such rejection.  If not timely filed, such Claim shall be forever barred.  Any Allowed Claim arising from the rejection of an executory contract or an unexpired lease shall be deemed a Class 3 Claim.

**ARTICLE VIII**
**PROCEDURES FOR RESOLVING AND TREATING DISPUTED**
**<u>CLAIMS AND INTERESTS</u>**

       8.1    <u>No Distribution Pending Allowance</u>.  Notwithstanding any other provision of this Plan, the Reorganized Debtors are not required to distribute Cash or other property under this Plan on account of any Disputed Claim or Interest, unless and until such Claim or Interest becomes an Allowed Claim or Interest.  Any non-disputed portions of such Claims or Interests shall be paid in accordance with this Plan.

       8.2    <u>Resolution of Disputed Claims or Interests</u>.  After the Confirmation Date, unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Reorganized Debtors shall have the right to make and file objections to Claims or Interests and shall serve a copy of each objection upon the holder of the Claim or Interest to which the objection is made as soon as practicable, but in no event later than one hundred eighty (180) days after the Effective Date.  From and after the Confirmation Date, all objections shall be litigated to a Final Order except to the extent the Reorganized Debtors elect to withdraw any such objection or the Reorganized Debtors and the claimant elects to compromise, settle or otherwise resolve any such

objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim or Interest without the approval or order of the Bankruptcy Court.

8.3     Estimation.  The Reorganized Debtors may, at any time, request that the Bankruptcy Court estimate any Disputed Claim or Interest pursuant to § 502(c) of the Bankruptcy Code regardless of whether the Reorganized Debtors or the Debtors have previously objected to such Claim or Interest, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim or Interest at any time, including during litigation concerning any objection to such Claim or Interest.   In the event that the Bankruptcy Court estimates any Disputed Claim or Interest, that estimated amount may constitute either the Allowed amount of such Claim or Interest or a maximum limitation on such Claim or Interest, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claims or Interests, the Reorganized Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim or Interest.   All of the aforementioned Claims or Interests objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.  On and after the Confirmation Date, Claims or Interests which have been estimated subsequently may be compromised, settled, withdrawn or otherwise resolved without the approval or order of the Bankruptcy Court.

8.4     Allowance of Disputed Claims.  If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Reorganized Debtors shall, on or before the last Business Day of the first month following the month in which the Claim becomes an Allowed Claim, distribute to the holder of such Allowed Claim the amount of Cash that such holder would have been entitled to receive under this Plan if such Claim had been an Allowed Claim on the Effective Date.

## ARTICLE IX
## EFFECTIVENESS OF THE PLAN

9.1     Conditions Precedent to the Effective Date.  The following are conditions precedent to the Effective Date of this Plan:

(a)     The Bankruptcy Court shall have entered a final order, not subject to any stay, confirming this Plan in form and substance satisfactory to the Debtors;

(b)     Halevy shall have delivered to the Administrative Agent the Halevy Guarantee on terms and conditions which are acceptable to Halevy and Administrative Agent.  The Halevy Guarantee shall provide that Halevy guarantees to the Lenders the payment of all Minimum Principal Payments to the holders of the Class 1 Claim arising during the Second Payment Period, up to a maximum of Two Million Five Hundred Thousand Dollars ($2,500,000).  Halevy shall enter into an amendment of the Affiliate Subordination Agreement acceptable to the Administrative Agent.  Halevy and the Debtors shall enter into a loan agreement whereby the Debtors will repay to Halevy all amounts paid by Halevy to Administrative Agent under the Halevy Guarantee, which loan agreement and all documents in connection therewith will (1) be acceptable to the Administrative Agent, (2) be subject to the Affiliate Subordination Agreement and (3) mature and become payable in full on the first day of the first full month following the payment in full of the Class 1 Claim or upon such later date as Halevy and the Debtors may agree.  A payment default arising as a result of the failure of the Debtors to make timely all or part of a Minimum Principal Payment during the first twelve months following the Effective Date, when and as due, may be cured by the payment by Halevy, timely and otherwise in accordance with the Halevy Guaranty, of all of such Minimum Principal Payment that is not timely paid by the Debtors.

27

(c)      The Consulting Agreement with UQU shall have been extended to June 30, 2015.

(d)      Amendments to the Credit Agreement and related loan documents shall have been executed and delivered by the Lenders and the Debtors.

(e)      All other documents, instruments and agreements provided for under or necessary to implement this Plan shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby; and

9.2      Within fourteen (14) days after the occurrence of the Effective Date, the Reorganized Debtors shall file a pleading entitled "Certification of Occurrence of Effective Date" with the Bankruptcy Court in which it shall state the date upon which the Effective Date occurred.

## ARTICLE X
## EFFECT OF CONFIRMATION

10.1      <u>Release of Assets</u>.  Until the Effective Date, the Bankruptcy Court shall retain jurisdiction of the Debtors and the Estate Assets.   Thereafter, jurisdiction of the Bankruptcy Court shall be limited to the subject matters set forth in Article XII of this Plan, and the Reorganized Debtors shall perform its affairs as provided in this Plan.

10.2      <u>Binding Effect</u>.  Except as otherwise provided in § 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or Interest in, the Debtors and their respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under this Plan and whether or not such holder has accepted this Plan.

10.3      <u>Term of Injunctions or Stays</u>.  Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to § 105 of the Bankruptcy Code, or

28

otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until all obligations of the Reorganized Debtors under this Plan have been performed and the Chapter 11 Case has been closed.

          10.4    <u>Discharge</u>. Except as otherwise provided in this Plan or the Confirmation Order, effective on the Effective Date, this Plan shall discharge and terminate all liability for any debt of or Claim against the Debtors that arose before the Effective Date, and any debt or claim of a kind specified in §§ 502(g), 502(h), or 502(I) of the Bankruptcy Code, whether or not:

          (a)    a Proof of Claim based on such debt or Claim was filed, or deemed filed, under § 501 of the Bankruptcy Code;

          (b)    such Claims are Allowed or Disallowed under § 502 of the Bankruptcy Code;

          (c)    such Claim was properly scheduled, if such claim holder had notice of this Chapter 11 Case before the Effective Date; or

          (d)    the holder of such Claim has accepted or rejected this Plan.

          10.5A  <u>Release and Injunction of the Debtors' Representatives</u>.  **On the Effective Date, the Debtors, in their respective individual capacity and as Debtors-in-Possession, for and on behalf of the Estate, the Reorganized Debtors, and each holder of a Claim against and Interest in the Debtors, hereby release and discharge, absolutely, unconditionally, irrevocably and forever: (a) any and all Causes of Action against all current or former Representatives of one or both of the Debtors (the "<u>Debtors' Representatives</u>"), in their capacity as such, from any Claim or Cause of Action (i) arising from the beginning of time through the Confirmation Date related to acts or omissions to act (including, but not limited to, any Claims or Causes of Action arising out of any alleged fiduciary or other**

29

duty), or (ii) which might at any time after the Confirmation Date arise out of or relate, directly or indirectly, to any pre-Confirmation Date acts or omissions; (b) any and all Causes of Action against any Debtors' Representative arising from or related to such Representative's acts or omissions to act in the Chapter 11 Cases prior to the Effective Date; and (c) to the extent not covered by (a) or (b), above, in consideration for certain concessions and compromises for the benefit of the Debtors and the Estate, as well as the treatment for claims agreed to hereunder, any all Causes of Action against Halevy, First Power Group LLC and UQU General LLC (collectively, together with the Debtors' Representatives, the "Debtor Released Parties.  Each holder of a Claim (whether or not Allowed) against or Interest in the Debtors, the Estate or the Reorganized Debtors shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover and shall be deemed to release any Claim against (i) any current or former officer, director, member or agent of the Debtors arising from the beginning of time through the Confirmation Date or which might at any time after the Confirmation Date arise out of or relate, directly or indirectly, to any pre-Confirmation Date acts or omissions related to his or her acts or omissions to act (including, but not limited to, any claims arising out of any alleged fiduciary or other duty), (ii) any current or former Debtors' Representative arising from or related to such Representative's acts or omissions to act in the Chapter 11 Cases prior to the Effective Date; and/or (iii) except as provided herein, Halevy, First Power Group LLC and UQU General LLC.  Claims against the Debtors arising out of their obligations after the Effective Date under the terms of this Plan, the Credit Agreement and Loan Documents (as defined in the Credit Agreement) as amended, and the Affiliate Subordination Agreement as amended, are not released by this

Plan.  Claims against Halevy arising out of his obligations after the Effective Date under the terms of this Plan, the Halevy Guaranty, the Loan and Reimbursement Agreement and the Affiliate Subordination Agreement as amended are not released by this Plan.  The obligations after the Effective Date of UQU Consulting Agreement LLC under the consulting agreement and First Power Group, LLC under its leases are not released by this Plan.

          **10.5B  Release of the Administrative Agent and the Lenders.**  On the Effective Date, the Debtors and the Debtor Released Parties hereby release and discharge, absolutely, unconditionally, irrevocably and forever:  (a) any and all Causes of Action against the Administrative Agent, all current or former Representatives of the Administrative Agent, the Lenders, and/or all current or former Representatives of the Lenders (collectively, the "Lender Released Parties") in their capacity as such, from any Claim or Cause of Action (i) arising from the beginning of time through the Confirmation Date related to acts or omissions to act (including, but not limited to, any Claims or Causes of Action arising out of or related to the Senior Loan and the administration thereof), or (ii) which might at any time after the Confirmation Date arise out of or relate, directly or indirectly, to any pre-Confirmation Date acts or omissions; and (b) any and all Causes of Action against any Lender Released Party arising from or related to such Lender Released Party' acts or omissions in the Chapter 11 Cases.  Each holder of a Claim (whether or not Allowed) against or Interest in the Debtors, the Estate or the Reorganized Debtors shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover and shall be deemed to release any Claim against (i) any Lender Released Party arising from the beginning of time through the Confirmation Date or which

31

might at any time after the Confirmation Date arise out of or relate, directly or indirectly, to any pre-Confirmation Date acts or omissions relating to the Senior Loan and the administration thereof, and (ii) any current or former Lender Released Party arising from or related to Lender Released Party's acts or omissions to act in the Chapter 11 Cases.

## ARTICLE XI

## LITIGATION AND AVOIDANCE ACTIONS

11.1    All litigation pending in other tribunals has been stayed by this Chapter 11 Case except in those cases where the creditor has obtained relief from the automatic stay to proceed in the appropriate trial court.  However, those cases proceeding in trial court are for the limited purpose of liquidating the amount of the Creditor's Claim.  The Claims of the plaintiffs in those actions will ultimately be satisfied, if at all, through disbursements made under the Plan.

11.2    Upon confirmation of the Plan except for any claims released pursuant to Section 10.5 of the Plan, the Debtors shall retain the sole and exclusive right and power to bring actions and assert rights under §§ 505, 506, 541, 542, 543, 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code, as well as any other rights and powers conferred upon a debtor-in-possession by the Bankruptcy Code.  Because the Plan provides for the payment in full of all allowed Claims, the Debtors shall not bring any such action unless there is a default under the Plan that occurs on or before October 1, 2015.

## ARTICLE XII
## RETENTION OF JURISDICTION

12.1    Jurisdiction of Bankruptcy Court.    The Bankruptcy Court shall, for a period of two (2) years after the Effective Date, retain exclusive jurisdiction of all matters arising under, arising out of, or related to, the Chapter 11 Case and this Plan pursuant to, and for the purposes of, §§ 105(a) and 1142 of the Bankruptcy Code and for, among other things, the

following purposes:

(a)    To hear and determine any motions for the assumption or rejection of executory contracts or unexpired leases, and the allowance of any rejection Claims resulting therefrom;

(b)    To determine any and all pending adversary proceedings, applications, and contested matters;

(c)    To hear and determine any objection to any Claims or Interests;

(d)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(e)    To issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code;

(f)    To consider any modifications of this Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(g)    To hear and determine all applications for compensation and reimbursement of expenses of Professional Persons under §§ 330, 331, and 503(b) of the Bankruptcy Code;

(h)    To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(i)    To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any

33

transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j) To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan, including any release or injunction provisions set forth herein, or to maintain the integrity of this Plan following consummation;

(k) To recover all assets of the Debtors and property of the Estate, wherever located;

(l) To hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under § 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns for any and all taxable periods ending after the Petition Date through, and including, the last distribution date);

(m) To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code, title 28 of the United States Code and other applicable law;

(n) To enter a final decree closing the Chapter 11 Case; and

(o) To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

**ARTICLE XIII**
**ACCEPTANCE OR REJECTION OF THE PLAN**

13.1 <u>Voting of Claims</u>.  Each holder of an Allowed Claim or Interest in an impaired Class of Claims or Interests shall be entitled to vote to accept or reject this Plan.

13.2 <u>Acceptance by a Class of Creditors</u>.  Consistent with § 1126(c) of the Bankruptcy Code and except as provided for in § 1126(e) of the Bankruptcy Code, a Class of

34

creditors shall have accepted this Plan if it is accepted by at least two-thirds in dollar amount and more than one-half in number of the holders of Allowed Claims or Interests of such Class that have timely and properly voted to accept or reject this Plan.

**ARTICLE XIV**
**MISCELLANEOUS PROVISIONS**

14.1     <u>Effectuating Documents and Further Transactions</u>.   The Reorganized Debtors shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, amendments and other agreements or documents and take such actions on behalf of the Reorganized Debtors as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

14.2     <u>Payment of U.S. Trustee Fees</u>.   All outstanding U.S. Trustee Fees, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid on or before the Effective Date.  Any U.S. Trustee Fees accruing after the Confirmation Date shall be paid by the Reorganized Debtors.

14.3     <u>Default</u>.  If the Reorganized Debtors substantially default on any payment of a tax or obligation due to any governmental unit under this Plan, then after written notice of such default and the failure of the Reorganized Debtors to cure such default, within thirty (30) days the entire tax debt still owed to such any governmental unit shall become due and payable immediately, and any such governmental unit may proceed with any remedies otherwise available to it under Federal and state law, including, but not limited to, the administrative collection provisions of the Internal Revenue Code and state tax collection procedures.

14.9     <u>Modification of Plan</u>.  The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan at any time prior to the entry of the Confirmation Order, with the consent of the Administrative Agent.  After the

entry of the Confirmation Order and with the consent of the Administrative Agent, the Debtors

(and after the Effective Date, the Reorganized Debtors) may upon order of the Bankruptcy Court,

amend or modify this Plan, in accordance with § 1127(b) of the Bankruptcy Code, or remedy any

defect or omission or reconcile any inconsistency in this Plan in such manner as may be

necessary to carry out the purpose and intent of this Plan.  A holder of an Allowed Claim or

Interest that is deemed to have accepted this Plan shall be deemed to have accepted this Plan as

modified if the proposed modification does not materially and adversely change the treatment of

the Claim or Interest of such holder.

14.10    Withdrawal or Revocation.   The Debtors may withdraw or revoke this

Plan at any time prior to the Confirmation Date.  If the Debtors revoke or withdraw this Plan

prior to the Confirmation Date, or if the Confirmation Date does not occur, then this Plan shall

be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a

waiver or release of any Claim by or against the Debtors or any other person or to prejudice in

any manner the rights of the Debtors or any other person in any further proceedings involving the

Debtors.

14.11    Courts of Competent Jurisdiction.   If the Bankruptcy Court abstains from

exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any

matter arising out of this Plan, such abstention, refusal or failure of jurisdiction shall have no

effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court

having competent jurisdiction with respect to such matter.

14.12    Notices.   Any notices to or requests of the Reorganized Debtors by parties

in interest under or in connection with this Plan shall be in writing and served either by (i)

certified mail, return receipt requested, postage pre-paid, (ii) hand delivery, or (iii) reputable

36

overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

<u>The Reorganized Debtors</u>:

Automated Business Power, Inc.
Automated Business Power Holding Co.
7611-J Rickenbacker Drive
Gaithersburg, MD 20879
Attention: Daniel Akman, President

With a copy to:

Nelson C. Cohen, Esquire
Zuckerman Spaeder LLP
1800 M Street, N.W.
Suite 1000
Washington, D.C. 20036

<u>The U.S. Trustee</u>:

Office of the U.S. Trustee
6305 Ivy Lane
Suite 600
Greenbelt, MD 20770

14.13   <u>Severability</u>.  In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of this Plan is invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtors, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order

37

shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

14.14   Governing Law.  Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Maryland, without giving effect to the principles of conflicts of law thereof.

14.15   Other Documents.  On or before ten (10) calendar days preceding the commencement of the hearing on the Confirmation of this Plan, unless the Bankruptcy Court orders otherwise, the Debtors and/or any party-in-interest, shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

14.16 Exculpation.  None of the Debtors, the Reorganized Debtors, or any of their respective current or former shareholders, officers, directors, employees, members or Representatives shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of this Plan, the consummation of this Plan or the administration of this Plan or the property to be distributed under this Plan, except for willful misconduct or gross negligence, and, in all respects, the Debtors, the Reorganized Debtors and each of their respective members, officers, directors, employees, advisors, professionals and agents shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

14.17   Injunction Against Interference With Plan.  Upon the occurrence of the Effective Date, all holders of Claims and Interests and other parties in interest, along with their

respective present or former affiliates, employees, agents, professionals, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

       14.18   <u>Headings</u>.  Headings are used in this Plan for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

February 9, 2015                Respectfully submitted,

                AUTOMATED BUSINESS POWER, INC. and
                AUTOMATED BUSINESS POWER HOLDING CO.

                By:    <u>/s/ Daniel Akman</u>
                         Daniel Akman, President

                ZUCKERMAN SPAEDER LLP

                <u>/s/ Nelson C. Cohen</u>
                Nelson C. Cohen, Bar No. 20036
                1800 M Street, N.W., Suite 1000
                Washington, D.C. 20036
                Tel.: (202) 778-1800
                Fax: (202) 822-8106
                Email: ncohen@zuckerman.com
                *Counsel for the Debtors and Debtors-in-Possession,*
                *Automated Business Power, Inc., and Automated Business*
                *Power Holding Co.*